UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-mj-73 (DLM)

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRENNA MARIE DOYLE | **FILED UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Christopher Potts, being first duly sworn, hereby depose and state as follows:

### Introduction And Agent Background

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since September 2018. I am currently assigned to a squad that investigates violent crime, narcotics distribution, and crimes against children in Indian Country. Before working crimes in Indian Country, I spent approximately two years investigating gang-related crime in Chicago, IL. I have experience in investigating counterterrorism matters, including threats of violence against federal officers.

2. This Affidavit is submitted in support of a criminal Complaint alleging that, on or about January 16, 2026, Brenna Marie DOYLE (YOB 2007) transmitted online threats to injure another person, namely a Federal law enforcement officer, in violation of 18 U.S.C. § 875(c), threatened to murder an immediate family member of a Federal law enforcement officer, in violation of Title 18 U.S.C. § 115(a)(1)(A), and threatened to murder a Federal law enforcement officer, in violation of Title U.S.C. § 115(a)(1)(B), (together "the Subject Offenses").

3. The facts set forth in this Affidavit are based on my own personal knowledge of the investigation, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. This Affidavit, however, is intended to show only that there is sufficient probable cause to support the charges alleged in the Complaint and does not set forth all of my or the government's knowledge about this matter.

4. Based on my training and experience and the totality of the facts and circumstances set forth in this Affidavit, and the reasonable inferences therefrom, Your Affiant has probable cause to believe that DOYLE committed the Subject Offenses.

## FACTS SUPPORTING PROBABLE CAUSE

### Background

5. On January 14, 2026, a Homeland Security Investigations (HSI) federal agent with Immigration Customs Enforcement (ICE) Enforcement Removal Operations (ERO) was involved in a shooting that occurred in the area of the 600-block of 24th Avenue North, in Hennepin County, Minneapolis, MN, while conducting an immigration enforcement action. Agents from the FBI Minneapolis Violent Crime Squad and personnel from the FBI Evidence Response Team (ERT) responded to the scene to investigate the incident and to gather evidence.

6. After collecting evidence from the scene and during the course of their investigation, a large group of protestors became violent and made the scene unsafe. Due to the number of protesters and the increasing tension and violence, law enforcement personnel in the area were unable to maintain a perimeter, and FBI agents and ERT personnel were forced to evacuate the area on foot for their personal safety with the help of other law enforcement officers and agents who responded to the scene. FBI agents were forced to leave two government-owned vehicles parked near the scene.

7. Several protestors attacked, vandalized, damaged, and broke into the two government-owned vehicles left at the scene, causing over an estimated $20,000 worth of damage to each vehicle, including broken windows and mirrors, spray painting of the exterior, punctured tires, damage to the engine and components, and ransacking and destruction of the interior of the vehicles. FBI-issued equipment and materials, including a rifle, rifle suppressor, a handgun, tactical vests, FBI IDs and building access badges, personal and various FBI documents were stolen from the vehicles. Some of the documents stolen contained rosters with employees' phone numbers, email addresses, and home addresses, as well as driver's licenses.

8. After the employees' personal information and documentation was compromised, several of the documents, including residential addresses, phone numbers, and emails, were posted publicly online on social media. Shortly thereafter, approximately 10 to 15 FBI Agents and employees began receiving multiple harassing and threatening phone calls and emails and suspicious drive-bys to their

3

residences, where vehicles would slow down as they passed the employees' residences before driving away.

### January 21, 2026 Interview With Victim A

9. On January 21, 2026, FBI SA Reid Theodore interviewed Victim A, an FBI SA with the Minneapolis Field Office, who had received multiple threatening phone calls after the January 14, 2026 incident, and whose information was contained on some of the documents stolen from the two government-owned vehicles that were damaged and ransacked by the protestors.[1] Your Affiant reviewed a report of the interview conducted with Victim A.

10. During the interview, Victim A indicated that they received multiple phone calls on their work phone that containing harassing and threatening communications. Some of the communications indicated that the callers knew Victim A's identity and where to find them. Victim A stated that they had already received an additional seven harassing and threatening calls as of 1:00 p.m. the day of the interview. Victim A told the investigators that they usually received the harassing and threatening calls throughout the day and that the calls would usually stop in the early evening.

11. Victim A stated that the harassing and threatening calls impacted their work as a Special Agent as well as their personal life. For example, Victim A's job responsibilities included coordination with other law enforcement entities and officers. As such, Victim A often provided their work number to other law

---

[1] Victim A's full name and identity is known to Your Affiant.

4

enforcement entities and public agencies so that Victim A could be readily contacted and consulted with as part of their job responsibilities. Victim A explained that Victim A would therefore often receive calls from numbers they did not recognize in the regular course of their work. Victim A indicated that, after their information was compromised, they now had to screen all their incoming calls which significantly disrupted Victim A's ability to do their job effectively and efficiently, as well as the agencies that Victim A worked with.

12.  Victim A also reported that they received one particular voicemail on January 16, 2026, at approximately 7:31 a.m. from an unknown number. Victim A reported that the unknown caller said in the voicemail words to the effect of, "I'm going to kill your daughter." Victim A called the school in which their daughter was a student and notified them of the threats, which significantly disrupted Victim A's daughter's schooling and caused Victim A and Victim A's family emotional distress.

### January 23, 2026 Victim A Voicemail Review

13.  On January 23, 2026, Your Affiant reviewed approximately 18 voicemails on Victim A's government-issued cell phone that were left by multiple individuals. Several of the voicemails contained harassing communications in which the callers called Victim A a "traitor" and "nazi."

14.  During my review, I discovered three voicemails in particular that Your Affiant has probable cause to believe contain true threats in which the caller directly states that they are going to kill Victim A and Victim A's family members. The caller's voice on the recorded voicemails appeared to be from a young female. All three calls

were received by Victim A's work cellphone voicemail on January 16, 2026, between the hours of 7:31 a.m. and 7:36 a.m. from an "unknown" number.[2] FBI personnel transcribed the three threatening voicemails, which are reproduced below in the order that they were received:

a. <u>Voicemail #1</u>: The first voicemail was received by Victim A's government-issued cellphone at approximately 7:31 a.m. from a then-unknown caller and contained the following message:

"You ruined my life, you piece of shit. You're going to fucking die. You and all of your fucking family. I don't fucking care. I am coming for you [Victim A].[3] I am coming for you, you fucking piece of shit. You will fucking die. I don't give a fuck who cares, who knows, I don't give a flying fuck. You are dead. Dead, do you hear me?"

b. <u>Voicemail #2</u>: The second voicemail was received by Victim A's government-issued cellphone at approximately 7:33 a.m. from the same then-unknown caller and contained the following message:

"You stupid bitch, you don't ruin my life and get away with it. You don't get to do that shit. Fucking stupid wife beater. You fucking masked idiot. Fuck you. I'm fucking coming for you. You'll know. You're stupid. You're pathetic. You're fucking [unintelligible]. Get a real fucking job, you fucking idiot. I'm gonna kill you."

c. <u>Voicemail #3</u>: The third voicemail was received by Victim A's government-issued cellphone at approximately 7:36 a.m. from the same then-unknown caller and contained the following message:

"You rip my family apart, I'll rip your family apart. Bitch. You, you fucking fat white-haired bitch. You, your wife, and your dead damn fucking

---

[2] Victim A reported that the number was hidden when they received the call and reviewed the voicemail.

[3] The caller used a common and accurate variation of Victim A's first name.

6

daughter are dead. You're fucking dead. I will fucking kill you myself, I don't give a flying fuck. Fuck you."

15. From the context of the above voicemails, Your Affiant assesses, based on his training and experience and the reasonable inferences from the facts contained in this Affidavit, that the caller utilizing the "unknown number" knew Victim A's identity, knew that Victim A is in law enforcement, and knew that Victim A had a family. Your Affiant also has probable cause to believe that the caller knowingly and intentionally made the communication for the purpose of issuing a threat, knowing that it would be perceived as a threat, or with reckless disregard that it would be perceived as a threat to injure or kill Victim A, a federal law enforcement officer, and their family.

### Identification of Brenna Marie DOYLE as the Caller

16. On January 23, 2026, I reviewed Victim A's work cellphone toll records and compared them with the times the calls from the three threatening voicemails were received. The first voicemail was recorded at approximately 7:31 a.m. on January 16, 2026. The toll records show phone number **509-294-8200** contacted Victim A's government-issued cellphone at approximately 7:31 a.m. The voicemail was approximately 21 seconds long.

17. The second voicemail was recorded at approximately 7:33 a.m. on January 16, 2026. The call records from Victim A's work cellphone again show number **509-294-8200** contacted Victim A's government-issued cellphone at approximately 7:33 a.m. The voicemail was approximately 25 seconds long.

7

18. The third voicemail was recorded at approximately 7:36 a.m. on January 16, 2026. The call records from Victim A's work cellphone again show number **509-294-8200** contacted Victim A's government-issued cellphone at approximately 7:36 a.m. The voicemail was approximately 15 seconds long.

19. The **509-294-8200** phone number was searched through a law enforcement database, which identified Brenna Marie DOYLE (YOB 2007) as the registered user of that number. FBI Agents investigating the matter also searched for the **509-294-8200** phone number though CashApp's publicly available search function, and the username $brennaD333 was located. FBI Agents also searched for the number through Snapchat's publicly available search function, and the username "b_doyle25515" was located. FBI Agents also searched for the number through Venmo's publicly available search function, and the username "brennad333" was located. Your Affiant notes that all three usernames that were located as matching the 509-294-8200 phone number are username variations of the name Brenna Doyle.

20. Your Affiant conducted a Google search of the phone's area code and learned that it locates in the Washington state area. Specifically, Google notes that the area code is used in Spokane, Yakima, and Tri-Cities area.

21. On the morning of January 24, 2026, FBI SA Randy Larkin requested subscriber information for the subject phone number via an Emergency Disclosure of Records from the carrier, T-Mobile. T-Mobile provided subscriber information and current location information for the device associated with phone number 509-294-8200. The number is subscribed to "Brenna Doyle" and is currently located in the

8

Spokane, WA, in an area that is consistent with being at or near Spokane Airport and the reported residential addresses of DOYLE.

22.   Your Affiant also reviewed DOYLE's criminal history. Your Affiant learned that DOYLE was arrested on July 31, 2025, in Spokane, WA, for gross misdemeanor fourth-degree assault, misdemeanor resisting arrest, and gross misdemeanor obstructing a law enforcement officer. Your Affiant also learned that DOYLE has a February 2025 felony conviction for attempting to elude a police vehicle. Law enforcement databases also show two addresses for DOYLE, both of which are located in Spokane, Washington.

## CONCLUSION

23. Based on the totality of the facts and circumstances within this Affidavit, the reasonable inferences therefrom, and Your Affiant's training, experience, and knowledge of the investigation, Your Affiant has probable cause to believe that on or about January 16, 2026, DOYLE committed the Subject Offenses.

Respectfully submitted,

Christopher Potts
Special Agent, FBI

SUBSCRIBED and SWORN before me,
by reliable electronic means (via FaceTime and
box on USAfx) pursuant to Fed. R. Crim. P. 41(d)(3),
on January 24, 2026

DOUGLAS L. MICKO
United States Magistrate Judge
District of Minnesota